UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 23-417-01 (APM) |
| v. )( | Judge Mehta |
| )( | Sentencing: December 6, 2024 |
| RICHARD MARKEY )( | |

## REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the defendant, Richard Markey, by and through undersigned counsel, and respectfully replies to the government's sentencing memorandum in this case. Towards this end, Mr. Markey would show:

1. On November 26, 2024, the government filed a Government's Sentencing Memorandum (ECF No. 46) in this case. In this memorandum, the government argues that Mr. Markey should be given a sentence of 54 months incarceration. Government's Sentencing Memorandum at 1, 40. In making this argument, in a section of the memorandum captioned, "Unwarranted Sentencing Disparities," the government indicates that a sentence of 54 months incarceration is appropriate for Mr. Markey because that same sentence was given to January 6 defendants Thomas Ballard and Jeffrey Brown. Id. at 36-37.

2. In case 21-cr-553 (RJL), Thomas Ballard pled guilty to one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon under 18 U.S.C. § 111(a) and (b). Judgment (ECF No. 76) at 1. According to the government's sentencing memorandum for Mr. Ballard, he came to the U.S. Capitol on January 6 with a gas mask, which he actually wore at times. Government's Sentencing Memorandum at 13. He arrived on the Lower West Terrace at around 1:50 p.m. and joined a group of rioters

1

who were confronting officers at this location. Id. Mr. Ballard then went to the front of these rioters. Id. at 14. When an officer grabbed a pole that another rioter was wielding and tried to take it away from him, Mr. Ballard "approached the officer and assaulted [him] by striking [his] hand[,] which was holding the pole." Id. at 15. Eventually, Mr. Ballard and the other rioters were able to overwhelm the officers, and they retreated. Mr. Ballard was then able to make his way to Upper West Terrace. In the process of all this, he was able to arm himself with a police baton. Id. at 16. At around 3:00 p.m., Mr. Ballard made his way to the "tunnel" on the Lower West Terrace, where "[h]e watched the violent assaults against the police inside the tunnel unfold for more than an hour before… entering the tunnel, where he joined the assaults." Id. at 17. At approximately 4:28 p.m., Mr. Ballard "began repeatedly assaulting police officers with numerous weapons[,] including a piece of metal scaffolding, several pieces of wooden plank and white metal pole." Id. At approximately 4:47 p.m., he "threw a table top at the officers." Id. He then "threw what appeared to be a table leg at the officers." Id. at 18. After this, he remained at the "front line" of rioters assaulting officers at the tunnel, and at approximately 4:50 p.m., "he began assaulting officers with a police baton." Id. At 4:51 p.m., he pointed a flashing strobe light at the officers to "blind and distract them" while they were fighting with the rioters. Approximately ten seconds later, he "threw a cup of some unknown liquid at the officers." Id. "Finally, prior to leaving the battle at the tunnel, he threw a pole at the officers." Id. at 19. Mr. Ballard's confrontations with the police at the Capitol lasted for over three hours. See id. at 15-19.

      3.      In contrast to Mr. Ballard, Mr. Markey's single confrontation with the police lasted just over two minutes. See Memorandum in Aid of Sentencing (ECF No. 47)

at 3-4.  And while Mr. Markey wielded a police baton when he was climbing up on the backs of other rioters to confront the officers guarding the entrance to the tunnel, he never actually struck an officer with it.  See Statement of Offense at 5 (ECF No. 36).  Moreover, while he did then use a broken half of a stick he subsequently obtained to strike at the officers, he directed his strikes at a riot shield they were holding up at head level to protect themselves.  Memorandum in Aid of Sentencing at 3.  At no time did he ever directly strike an officer with the stick.

      4.      In case 21-cr-178 (APM), Jeffrey Brown went to trial and was convicted on one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon and Aiding and Abetting under 18 U.S.C. §§ 111(a)(1) and (b), 2.  Judgment (ECF No. 214) at 1.  He was also convicted on four other felonies.  Id. at 1-2.  According to the government's sentencing memorandum for Mr. Brown, on January 6, at approximately 2:56 p.m., he entered the "tunnel" on the Lower West Terrace of the Capitol "while rioters pushed against the police officers guarding the entryway to the building."  He remained in the tunnel "long enough to see the pushing, rioters holding large objects, and the general chaos."  Id. at 4-5.  Government's Sentencing Memorandum (ECF No. 201) at 4.  After seeing all this, he left the tunnel, but he then entered it again at approximately 3:09 p.m.  This time, he "made his way to the front of the crowd of the rioters, where he was directly in front of the doors leading to the Capitol[] and the officers who guarded them."  Id. at 6. Another rioter then handed him a spray cannister for him to use against the officers, but it appears he was unable to get it to work.  However, after getting another rioter to adjust the cannister for him, he made his way back to where he was again directly in front of the police officers, and this time, he was able to deploy the

3

cannister against them, "spraying an orange liquid directly above the heads of the line of officers." Id. "While the stream did not directly hit any officer, its effect was to heighten the danger to the officers in [the] tunnel [generally]." Id. at 7. This is because of the "confined space" the stream was discharged into and because of the wind blowing into the tunnel. Id. After spraying the officers in the tunnel with the orange liquid, Mr. Brown participated in a "heave ho" that caused an officer to get crushed between a door frame and a riot shield that a rioter was pressing against the officer's body. Id. at 8. After leaving the tunnel, Mr. Brown remained at the Capitol "for hours that evening"—that is, until at least after dark. Id. Moreover, even after his arrest, Mr. Brown "has not expressed remorse for his actions." Id. at 9. In a video he made, he "called himself a 'political prisoner' who had been detained "due to political motivations," and he "falsely stated that the Capitol police had attacked rioters 'unprovoked[]" and that the police had 'initiated' the violence." In that video, "[h]e gave 'a five-alarm warning to all freedom-loving patriots, they need to get out of their comfort zones, take actions in their communities, and wake all of their neighbors they can." Id. at 10.

5. In contrast to Mr. Brown, Mr. Markey did not take case his case to trial. He pled guilty and accepted responsibility for his actions. He pled guilty even though, because of the nature of the charge at issue, it meant he was going to be detained pending sentencing. He did not seek to delay things in the hope that Donald Trump might win the presidential election and pardon him, and even after Donald Trump won the election, he has not sought to withdraw his plea and thus get out of his pre-sentencing detention so as to maximize the advantage of any pardon that might come. He has never said anything on social media or anywhere else to glorify what happened at the Capitol on January 6, and he

4

has never referred to himself or any other January 6 defendants as political prisoners or made any excuses that the police at the Capitol are the ones who were responsible for what happened on January 6. After the events of January 6, he has never encouraged others to take action against the government. It is also important to note that the sentence of 54 months incarceration that was given to Mr. Brown was a downward variance from his Guidelines range of 63-78 months. See Tr. 4/28/23 (case number 21-cr-178 (APM)) (ECF No. 212) at 6. A sentence of 54 months incarceration for Mr. Markey is near the high end of his Guidelines range of 46-57 months. In arguing that Mr. Markey be given the same sentence of 54 months incarceration that was given to Mr. Brown, the government is thus saying that he should be treated significantly more harshly than Mr. Brown under the Guidelines—despite the fact that Mr. Brown was not only convicted under 18 U.S.C. § 111(a) and (b) but also for four other felonies as well and despite the obvious differences between Mr. Markey and Mr. Brown in terms of acceptance of responsibility and contrition.

6. Given the above, Mr. Markey should be given a significantly less severe sentence than the one given to Mr. Ballard and Mr. Brown.

WHEREFORE the defendant, Richard Markey, replies to the government's sentencing memorandum in this case.

Respectfully submitted,
\_\_\_\_/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Richard Markey
717 D Street, N.W., Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 641-4211